```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------x

  ROZELL TAYLOR,

              Plaintiff,

        -against-                              MEMORANDUM AND ORDER
                                               19-cv-4890(EK)(VMS)
  AMERICAN CORADIUS INTERNATIONAL, LLC,

              Defendant.


---------------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Rozell Taylor claims that a letter he received from Defendant American Coradius International, LLC (a debt collector) violates Sections 1692g and 1692e of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA). Defendant moves to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim. For the reasons stated below, the Court grants Defendant's motion in its entirety.

I.

Defendant sent Plaintiff a debt-collection letter dated August 28, 2018, which the Court attaches for reference. *See* Exhibit A (Collection Letter). In brief, the front page of the letter contains a payment coupon listing the "Creditor" (Synchrony Bank), "Original Creditor" (WebBank), "Account Balance," and three physical addresses — one of which is

1

Plaintiff's home. *See id.* at 1. Below the coupon, the letter begins: "We are writing to you regarding your PayPal Credit account. The servicer of PayPal Credit accounts is Bill Me Later, Inc. This account has been placed with our office for collection." *Id.* The rest of the letter contains required disclosures, with some on the front (federal disclosures) and others on the back (state disclosures). *See id.* at 1-2.

## II.

### A. Rule 12(b)(6) Standard

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). However, only "a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. The FDCPA and the Least Sophisticated Consumer Standard

To prevent abuse, the FDCPA requires debt collectors to disclose certain information to consumers when contacting them about payment. This mandatory disclosure must contain the following information:

2

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Debt collectors violate the FDCPA if they fail to provide this information or if they provide this information but then make other "communications" that "overshadow" parts of the disclosure — namely, the so-called "validation notice" required by subsections (3) through (5), which informs consumers that they have a right to verify and dispute the debt and to receive information about the original creditor. *See* 15 U.S.C. § 1692g(b). Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including through the "use of any false representation or deceptive means to collect or attempt to collect any debt," *id.* § 1692e(10).

In analyzing claims under these provisions, courts must read debt-collection letters from the perspective of the "least sophisticated consumer" (LSC). *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). The LSC would misunderstand a collection letter if it is "reasonably susceptible to an inaccurate reading," *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001), or "open to more than one reasonable interpretation at least one of which is inaccurate," *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).

Still, in applying the LSC standard, "courts have carefully preserved the concept of reasonableness." *Id.* at 1319. "The FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice." *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237 (2d Cir. 1998) (quoting *Rosa v. Gaynor*, 784 F. Supp. 1, 3 (D. Conn. 1989)). Instead, courts may assume the LSC makes "reasonable and logical deductions and inferences," *Dewees v. Legal Serv., LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007), and will read the letter from start to finish, *see McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002).

**C. Plaintiff's Claims**

Plaintiff claims that the letter violates Sections 1692g(a)(2), 1692g(b), and 1692e of the FDCPA. He claims,

4

first, that it fails to identify "the name of the creditor to whom the debt is owed" under Section 1692g(a)(2), Complaint at ¶¶ 35-56, ECF No. 1 (Compl.) (First Count), and is therefore "deceptive" under Section 1692e, *id.* at ¶¶ 57-70 (Second Count). Second, he claims that the letter's validation notice is overshadowed by other parts of the letter (and thus also deceptive) because the letter does not adequately identify the address to which consumers should send dispute letters, *id.* at ¶¶ 71-125 (Third Count); and because the format of the letter makes the validation notice too inconspicuous compared to other parts of the letter, *id.* at ¶¶ 126-77 (Fourth Count).

### 1. Identification of the Creditor to Whom the Debt is Owed

The FDCPA requires that debt collectors convey the identity of the creditor to whom the recipient owes a debt. *See* 15 U.S.C. § 1692g(a)(2). Plaintiff argues that Defendant violated this provision because the letter does not assign the label "current creditor" (or a similar title) to any entity, Compl. at ¶¶ 43, and lists several entities without clarifying which one Defendant represents, *id.* at ¶¶ 44-51 (First Count). For these reasons, Plaintiff claims the letter is also "deceptive" under Section 1692e. *Id.* at ¶¶ 57-70 (Second Count).

There is no dispute as to the facts here, given that the communication in question occurred entirely within the four

5

corners of the letter. And the letter permits no reasonable confusion as to "the name of the creditor to whom the debt is owed" under Section 1692g(a)(2). Indeed, looking at the face of the letter, the Court is hard-pressed to hypothesize how the creditor's identity could be conveyed any more clearly than it is, with a table prominently displaying the word **"Creditor"** in bold type in a box in the center of the page, set apart from the body of the letter, and the identity of the creditor — Synchrony Bank — clearly identified immediately below that designation. *See* Collection Letter at 1. In this way, this case is unlike those in this Circuit finding violations of Section 1692g(a)(2), which involved letters that failed to identify any entity as the creditor. *See, e.g.*, *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-cv-3549, 2016 WL 4148330, at *11-12 (E.D.N.Y. Aug. 4, 2016) (naming an entity in the letter's "caption" without further explanation of the entity's role); *McGinty v. Prof'l Claims Bureau, Inc.*, No. 15-cv-4356, 2016 WL 6069180, at *4 (E.D.N.Y. Oct. 17, 2016) (same); *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 487 (E.D.N.Y. 2013) (same).

As Plaintiff points out, the body of the letter does complicate matters by introducing two additional entities' names into the mix: "We are writing to you regarding your PayPal Credit account. The servicer of PayPal Credit accounts is Bill Me Later, Inc." *See* Collection Letter at 1. Reasonable minds

6

could differ on whether this additional information is clarifying or confusing. The information could be read as clarifying because it points to entities with which the consumer may have interacted directly — namely, the entity with whom Plaintiff held his account (PayPal), and the servicer (Bill Me Later). It thus might jog the recipient's memory. *See Dennis v. Niagara Credit Sols., Inc.*, 946 F.3d 368, 371 (7th Cir. 2019) (finding it "helpful" for a letter to identify the entity which the consumer "had done business with" because doing so helps the LSC "understand that his debt has been purchased by the current creditor").

But a case could be made that including this information does more harm than good, as it introduces some superfluous information such as the name of the servicer. And on a motion to dismiss the Court must, of course, "draw[] all reasonable inferences in favor of the plaintiff." *See Lee v. Alfonso*, 112 Fed. App'x 106, 107 (2d Cir. 2004). Thus the Court proceeds from the assumption that the function of these additional names would be unclear to the LSC.

Even so, any such confusion relates solely to matters beyond the scope of Section 1692g. There is no suggestion that either of these entities is "the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). That entity is prominently identified above as Synchrony Bank. As a district court in the

7

Northern District of New York — addressing a virtually identical letter – recently explained, "PayPal and Bill Me Later, Inc. are mentioned only incidentally in the letter, and nothing indicates that they currently own any of the debt." *See Muldowney v. Am. Coradius Int'l, LLC*, No. 5:19-cv-422, 2020 WL 707186, at *4 (N.D.N.Y. Feb. 12, 2020) (dismissing FDCPA claim).  And there is simply no requirement in the statute that a debt-collection notice clearly describe *every step* in the chain of ownership that the debt travels to arrive in the current creditor's possession.  Rather, the statute requires identification only of "the name of the creditor to whom the debt is owed."  15 U.S.C. § 1692g(a)(2).  As noted above, the instant notice could hardly be clearer in its identification of Synchrony Bank as that entity.  *Cf. DeLeon v. Action Collection Agency of Bos.*, No. 17-cv-8899, 2018 WL 2089343, at *3 (S.D.N.Y. May 3, 2018) (finding that a letter's direction to "[a]sk for Mr. Jones" would not cause confusion as to the identity of the creditor).[1]

---

[1] Plaintiff argues that Defendant's letter violates Section 1692g(a)(2) because it does not explain the relationship between Defendant and the creditor.  *See* Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 12–14, ECF No. 20 (Opp.).  This argument is plainly incorrect.  The letter, which was sent on Defendant's letterhead, states that it is "from a debt collector" and clearly identifies Synchrony Bank as the "Creditor"; it goes on to say that "[t]his account has been placed with our office for collection."  Collection Letter at 1.  Given this, the LSC "would realize that defendant, the letter's sender, is collecting the debt" for Synchrony Bank, the creditor.  *Schlesinger v. Jzanus Ltd.*, 18-cv-0226, 2018 WL 2376302, at *3 (E.D.N.Y. May 24, 2018).  In any event, there is no requirement in the statute that a debt-collection notice set forth any explication of the relationship between a creditor and a debt collector.

8

For these reasons, the letter complies with Sections 1692g(a)(2) and 1692e.  Defendant's motion to dismiss Plaintiff's first and second claims is therefore granted.

### 2. Inclusion of Multiple Addresses

Debt collectors must provide consumers an address to send written dispute letters.  *See* 15 U.S.C. §§ 1692g(a)(3)-(b); *see also Musarra v. Balanced Healthcare Receivables, LLC*, No. 19-cv-5814, 2020 WL 1166449, at *7 (E.D.N.Y. Mar. 11, 2020). Plaintiff claims Defendant's letter fails to identify this address clearly enough because it lists two addresses — one in Texas, and one in New York — without explaining which is the right one.  Compl. at ¶¶ 83-85, 87.  For these reasons, Plaintiff claims that the letter violates Section 1692g(b) because the multiple addresses "overshadow" and "are inconsistent with" Defendant's validation notice, *id.* at ¶¶ 102-07, which also makes the letter deceptive under Sections 1692e and 1692e(10), *id.* at ¶¶ 108-24.  The same LSC standard applies to each of these claims.  *See Musarra*, 2020 WL 1166449, at *4.

The Court finds that the letter is not reasonably susceptible to misinterpretation or misunderstanding concerning the address to which dispute letters should be directed.  The body of the letter tells the recipient that if he "notif[ies] this office in writing" that he "dispute[s] the validity of this

9

debt or any portion thereof," then "this office will obtain verification of the debt . . . ." Collection Letter at 1. There is only one reasonable interpretation of the phrase "this office" — American Coradius's address in Amherst, New York. Multiple signs point to that conclusion.

Immediately following the body of the letter appears a signature block, which reads: "Sincerely, Evan Roth, American Coradius International LLC." *Id.* The New York address of American Coradius is listed twice on that page, reading the same way in both iterations — once on the coupon, and again in the bottom margin. *Id.* And when it appears in the bottom margin, it is tagged with the label "Office Address," which ties back to Mr. Roth's request that dispute notices be sent to "this office." *Id.* The New York address is repeated in the bottom margin of the next page as well, again with the "Office Address" designation. *Id.* at 2.

Only one other address (besides the Plaintiff's own) appears in the letter. This is a Texas address in the upper left corner of the "coupon" (the upper third of the letter's front page), where return addresses commonly appear. There is nothing to associate this address with notice for disputes or, indeed, anything tying that address to American Coradius at all.

Reading this, the LSC would understand that disputes must be mailed to Defendant's "office address" in New York.

10

Indeed, courts have dismissed challenges to letters that are less clear in this respect. For instance, the court in *Park v. Forster & Garbus, LLP* dismissed such a claim even though the letter listed multiple addresses under an instruction to send disputes to "the address listed below." No. 19-cv-3621, 2019 WL 5895703, at *4 (E.D.N.Y. Nov. 12, 2019). Likewise, another judge in this court recently dismissed a challenge to a letter where the dispute address was presented in a manner similar to — but if anything, more ambiguous than – the one here. *See Saraci v. Convergent Outsourcing, Inc.*, No. 18-cv-6505, 2019 WL 1062098, at *3 (E.D.N.Y. Mar. 6, 2019). In *Saraci*, the letter failed to designate an "office address" and framed the address in different ways — once with a street address, and twice only with a P.O. box. Still, the *Saraci* court held that the LSC "would know [where] to mail their disputes." *See id.* at *3-4 ("Because the Renton, Washington address is listed on the letter three times under 'Convergent Outsourcing, Inc.,' it is clear that the Renton, Washington address is defendant's office address."); *see also Gansburg v. Credit Control, LLC*, No. 18-cv-5054, 2020 WL 1862928, at *1 (E.D.N.Y. Feb. 27, 2020) (granting summary judgment for defendant where letter listed one address in the "upper-left-hand corner" of the payment slip, and another (correct) address three times throughout the rest of the letter).

11

In keeping with this line of cases, the Court finds that the LSC, having read the letter, "would know to mail a dispute" to Defendant's New York address. *Gansburg*, 2020 WL 1862928, at *1. Defendant's motion to dismiss Plaintiff's third claim is granted.

### 3. **Formatting of the Letter**

Plaintiff claims that Defendant's letter violates Sections 1692g(b) and 1692e because it is formatted in a way that overshadows and is "inconsistent with" the required validation notice. *See* Compl. at ¶¶ 126-77. According to Plaintiff, the validation notice is "burie[d]" in the letter because it is presented in "running text" with "the same font size, style, color and case as the rest of text, in the body of the Letter," *id.* at ¶¶ 139-40, without any transitional language calling the reader toward the notice, *id.* at ¶¶ 149-51. Making matters worse (Plaintiff claims), the letter draws the reader's attention away from the validation notice by making other parts of the letter more conspicuous — specifically, by directing the reader in bold, all-caps text to "see second page for important information," *id.* at ¶¶ 143-44, and by listing the "online payment information in an underlined typeface within a box" containing "various other means of making such payment," *id.* at ¶¶ 141-42.

A debt-collection letter fails to adequately convey the validation notice if other language in the letter "overshadows" or "contradicts" the validation notice. *See, e.g., Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998). In analyzing this claim, the question is whether the letter "would make the least sophisticated consumer uncertain as to her [validation] rights." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). Successful plaintiffs often identify contradictions in the letter that "would mislead the least sophisticated consumer into disregarding his or her rights under the validation notice." *See Ward v. Gold Key Credit, Inc.*, No. 18-cv-2834, 2019 WL 3628795, at *2 (E.D.N.Y. July 11, 2019).

Although a letter's formatting can "overshadow" a validation notice, the formatting here comes nowhere close. The notice appears on the front page of the letter in the same, black font as the surrounding text. *See* Collection Letter at 1. It is legible and uncontradicted, and that is enough not to "make the least sophisticated consumer uncertain as to her rights." *Delfonce v. Eltman Law, P.C.*, 712 Fed. App'x 17, 20 (2d Cir. 2017); *see also Sturm v. Alpha Recovery Corp.*, No. 19-cv-0556, 2020 WL 1140425, at *4 (E.D.N.Y. Mar. 6, 2020) (dismissing claim because "Plaintiff has cited no case law to support the proposition that, as a matter of law, providing the

13

validation notice prominently within the body of the collection letter fails to adequately inform a debtor of her rights"); *McGinty*, 2016 WL 6069180, at *6 (rejecting overshadowing claim where validation notice was written in "dark, legible font" on the front page of the letter).

Plaintiff's reliance on the Second Circuit's ruling in *Clomon* fails. The quote he attributes to that case can only be found in *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988). *See* Opp. at 17. The quote reads:

> the statute is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor. ***It must be large enough to be easily read and sufficiently prominent to be noticed*** — even by the least sophisticated debtor.

*Id.* (quoting *Swanson*, 869 F.2d at 1225) (citing *Clomon*, 988 F.2d at 1319) (emphasis in Plaintiff's brief). Neither *Clomon* nor *Swanson* are availing. True, the *Swanson* letter was formatted to distract the reader from their validation rights, but

> [m]ore importantly, the substance of the language stands in threatening contradiction to the text of the debt validation notice. The [additional notice] . . . leads [the LSC], and quite probably even the average debtor, only to one conclusion: he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the "master file" of his local collection agency and will, accordingly, lose his "most valuable asset," his good credit rating.

*See Swanson*, 869 F.2d at 1226.

14

Like *Swanson*, the *Clomon* letter contained threatening language. *See* 988 F.2d at 1320-21 (falsely suggesting a lawyer sent the letter). Indeed, nearly every successful overshadowing claim in this Circuit involved a threat or contradiction. *See, e.g., DeSantis*, 269 F.3d at 162 (letter demanded immediate payment or a "valid reason" for nonpayment); *Savino*, 164 F.3d at 85-86 (same); *Ehrich v. I.C. Sys., Inc.*, 681 F. Supp. 2d 265, 272 (E.D.N.Y. 2010) (letter would confuse Spanish-speaking reader because it directed reader to call a phone number in Spanish but provided validation notice in English); *Gaetano v. Payco of Wisc., Inc.*, 774 F. Supp. 1404, 1411-12 (D. Conn. 1990) ("Defendant's statement to call 'today' if there is valid reason for non-payment . . . contradicts and detracts from the requirement that, to dispute the validity of the debt . . . the consumer must do so in writing."). In the instant case, Defendant's letter made no such threat or contradictory representation, and Plaintiff has not alleged any.

Outside this line of cases, courts routinely dismiss overshadowing claims like the one Plaintiff makes here. Indeed, the Northern District of New York recently dismissed the same claim against a functionally identical letter, explaining that: "Plaintiff did not need to go to the second page for important information to get the statutorily required warnings; they were on the first page. The information on the second page did not

15

contradict those statements, but instead amplified the rights that Plaintiff had in the debt collection process." *Muldowney*, 2020 WL 707186, at *6 (dismissing claim).  Other courts have reached similar conclusions.  *See, e.g.*, *Musarra*, 2020 WL 1166449, at *7 (notice at the bottom of the front page directing reader to next page did not "overshadow" the "prominent[]" validation notice on the front page); *Sturm*, 2020 WL 1140425, at *4-5 (same); *Park*, 2019 WL 5895703, at *6 (same, explaining that "even if the LSC . . . [reads] the second page first, knowing that it contained an 'important notice,' they would still be responsible for reading the validation notice in the second paragraph"); *Pape v. Law Offices of Frank N. Peluso, P.C.*, 3:13-cv-63, 2016 WL 53821, at *5 (D. Conn. Jan. 5, 2016) (italicized validation notice was not overshadowed by "bold" and "underlined" text elsewhere).  The same reasoning applies here.  Neither the direction to "see [the] second page" nor the box containing online payment information improperly "overshadows" the validation notice in this letter.  Defendant's motion to dismiss Plaintiff's fourth claim is therefore granted.

**III.**

For the reasons stated above, Defendant's motion to dismiss Plaintiff's complaint is granted.

SO ORDERED.

_____/s Eric Komitee_____
ERIC KOMITEE
United States District Judge

Dated: Brooklyn, New York
       August 5, 2020